EXHIBIT A

@003



**U.S. Department of Justice**

United States Marshals Service

*Western District Pennsylvania*

*Pittsburgh, PA 15219*

# AGREEMENT FOR THE SALE OF COMMERICAL PROPERTY

This agreement is made on this 14 day of DEC 2007, with the intent to be legally bound hereby, between the United States Marshals Service (USMS), seller, and Raymond Edge Buyer, Diane EDGE concerning the real property known and numbered as **12171 Blair Street, Conneaut Lake, PA 16316** having a tax identification parcel number of 4403-01-19,20,21,28&43A and all of the appurtenances and hereditaments thereto. The agreement is as follows:

1. Seller will transfer the said property to buyer (s) "As-Is" by Special Warranty Deed for the consideration in the amount 75,000 ($75,000- )

2. Buyer (s) will purchase and accept the said property "As Is."

3. Buyer (s) will pay all closing and settlement costs, including, without limitation, both buyer (s) and seller's transfer taxes and settlement fees.

4. Seller will not warrant zoning and other ordinances.

5. Upon execution of this agreement, the buyer(s) shall immediately forward to the seller hand money in the amount of $1,000.00 payable to immediately **Caldwell Bankers** Failure to submit such hand money will cause for this agreement to become null and void. Time is of the essence.

6. This agreement must be executed by the buyer (s) on or before 2-15-08 otherwise, the USMS' offer to buyer (s) hereunder is null and void and the USMS may obtain another buyer for the said property.

7. Within ten (10) days of execution of this agreement, the buyer (s) has the right to inspect the said property. If repairs exceed five hundred dollars ($500), the buyer (s) has the option at that time of terminating this agreement. The buyer (s) must submit a written request to the USMS within five (5) days of the inspection date indicating buyer (s) option to terminate this agreement. Time is of the essence. If USMS grants the buyer (s) request to terminate this agreement, the USMS must immediately return all hand monies to the buyer (s).

12171 Blair Street / Conneaut Lake, PA 16316

Page 2 of 3
Agreement of Sale between
USMS & _Raymond a Dace Egie_
Dated: _12-4-07_

8. This agreement is contingent upon the buyer (s) providing the USMS on or before _____, a written commitment of a loan and or cash available for closing on said property. If the buyer (s) fails to provide the USMS with such information by _____ 2007 this agreement will become null and void, and the USMS will immediately return to buyer (s) all hand monies. Time is of the essence. In such event, the USMS may obtain another buyer for said property.

9. This agreement is contingent upon the buyer (s) right to obtain good and marketable title insurance. In the event the buyer (s) can not purchase such insurance on or before the closing date, this agreement will be considered null and void and the seller will immediately return buyer hand monies. Time is of the essence.



10. Seller acknowledges receipt of a copy of the Lead-Base Paint Inspection Report conducted by **Rober Kock** dated September 27, 2007. Buyer (s) agrees to hold harmless the United States Marshals Service, the United States of America, it's employees and agents of any damages and or liabilities as a result of any lead-base paint contamination, whether or not identified in the report dated September 27, 2007. Buyer(s) also agrees to be responsible for any and all abatement of any lead-base paint contamination of said property, all cost for any and all abatement will be born by the buyer (s).

11. Buyer (s) will close on said property on or before _2-15-08_ otherwise, said agreement will be considered null and void, and the buyer (s) hand monies will be forfeited to USMS and said property may be resold by the USMS.

This agreement and all its terms and conditions shall jointly severally extend and be binding upon the respective parties hereto, and their successors and assigns. This agreement may not be changed, modified or amended except in writing and signed by all parties. This agreement

12171 Blair Street / Conneaut Lake, PA 16316

Page 3 0f 3
Agreement of Sale between
USMS & *Raymond + Diane Edge*
Dated: *12-14-07*

may be executed in two or more counterparts each of which shall constitute the original and all such counterparts shall constitute one and the same instrument.

SELLER:

United States Marshals Service

---------------------
Thomas M. Fitzgerald                                    ---------------------
United States Marshal                                   Date
Western Pennsylvania


---------------------
Rhonda Wilburn                                          ---------------------
Supervisor Property Management Specialist               Date
Western Pennsylvania

BUYER (s):

X *Raymond Edge*                    X _____ *1-14-08*
                                    Date
X *Diane Edge*                      X _____ *1-14-08*
                                    Date
WITNESS:

---------------------
Realtor                                                 ---------------------
                                                        Date

01/18/2008 12:28 FAX 8149629118    CBBK CNL    ☒007

## STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of REALTORS® (PAR).

A/S-R

### SELLER'S BUSINESS RELATIONSHIP WITH PA LICENSED BROKER

BROKER (Company) Coldwell Banker Bainbridge Kaufman    PHONE 814-382-5225
ADDRESS 12213 Midway Drive Conneaut Lake, Pa 16316    FAX 814-382-3718
LICENSEE(S) Judy Weaver

BROKER IS THE AGENT FOR SELLER.    OR (if checked below):    Designated Agent? ☐ Yes ☐ No
Broker is NOT the Agent for Seller and is a/an:    ☐ AGENT FOR BUYER    ☐ TRANSACTION LICENSEE

### BUYER'S BUSINESS RELATIONSHIP WITH PA LICENSED BROKER

BROKER (Company) Coldwell Banker Bainbridge Kaufmann    PHONE 814 382-5225
ADDRESS 12213 Midway Drive Conneaut Lake, Pa. 16316    FAX 814 382-3718
LICENSEE(S) Cindy Neff

BROKER IS THE AGENT FOR BUYER.    OR (if checked below):    Designated Agent? ☒ Yes ☐ No
Broker is NOT the Agent for Buyer and is a/an: ☐ AGENT FOR SELLER ☐ SUBAGENT FOR SELLER ☐ TRANSACTION LICENSEE

When the same Broker is Agent for Seller and Agent for Buyer, Broker is a Dual Agent. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Seller and Buyer, the Licensee is a Dual Agent.

1. **This Agreement**, dated ___12-14-07___, is between

2. SELLER(S): ___United States Marshals___

5. BUYER(S): ___Raymond W. + Diane E. Edge, JR.___ 301 843-8637 H, called Seller, and
   ___14 Bantry Court___ 301 848-0454 C
   ___Waldorf, Maryland 20602___, called Buyer.

2. PROPERTY (9-05) Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase:
   ALL THAT CERTAIN lot or piece of ground with buildings and improvements thereon erected, if any, known as:
   ___12171 Blair Street Conneaut Lake, Pa. 16316___
   in the ___Township___ of ___Sadsbury___
   County of ___Crawford___ in the Commonwealth of Pennsylvania. Identification (e.g., Tax ID #; Parcel #;
   Lot, Block; Deed Book, Page, Recording Date): ___4403-01-19-26-21-38-43A___

3. TERMS (9-05)
   (A) Purchase Price ___Seventy Five Thousand Dollars___

   which will be paid to Seller by Buyer as follows: ___U.S. Dollars,___

   1. Cash or check at signing this Agreement: _____
   2. Cash or check within _____ days of the execution of this Agreement: _____ $ ___1,000.00___
   3. _____ $ _____
   4. Cash or cashier's check at time of settlement: _____ $ ___74,000.00___
      **TOTAL** $ ___75,000.00___

   (B) Deposits paid by Buyer within __30__ DAYS of settlement will be by cash or cashier's check. Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here), _____ who will retain deposits in an escrow account until consummation or termination of this Agreement in conformity with all applicable laws and regulations. Any check tendered as deposit monies may be held uncashed pending the acceptance of this Agreement.

   (C) Seller's written approval to be on or before: ___1-15-08___
   (D) Settlement to be on ___1-31-08  2-15-08___
   (E) Settlement will occur in the county where the Property is located or in another county, during normal business hours, unless Buyer and Seller agree otherwise, or before if Buyer and Seller agree.
   (F) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
   (G) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
   (H) At time of settlement, the following will be adjusted pro-rata on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes (see Information Regarding Real Estate Taxes); rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service. All charges will be pro-rated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated

Buyer Initials: _____

A/S-R Page 1 of 10
Revised 9/05

Seller Initials: _____

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2005
9/05

Pennsylvania Association of REALTORS®

01/24/2008  15:00  4126446432    US MARSHALS    PAGE 08/17

01/18/2008 12:28 FAX 8143823718    CBBK CNL    ☒008

42  **4. FIXTURES & PERSONAL PROPERTY (9-05)**

43     (A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, including plumbing; heating; lighting fix-
44       tures (including chandeliers and ceiling fans); water treatment systems; pool and spa equipment; garage door openers and transmitters; tele-
45       vision antennas; unpotted shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property at the time of set-
46       tlement; sump pumps; storage sheds; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors;
47       window covering hardware, shades and blinds; awnings; built-in air conditioners; built-in appliances; and the range/oven unless otherwise
48       stated. Also included: _All Contents as reviewed_

50     (B) LEASED items (not owned by Seller): _____

52     (C) EXCLUDED fixtures and items: _____

54  **5. DATES/TIME IS OF THE ESSENCE (9-05)**
55     (A) The settlement date and all other dates and times referred to for the performance of any of the obligations of this Agreement are of the essence
56       and are binding.
57     (B) For purposes of this Agreement, the number of days will be counted from the date of execution, excluding the day this Agreement was exe-
58       cuted and including the last day of the time period. The Execution Date of this Agreement is the date when Buyer and Seller have indicated
59       full acceptance of this Agreement by signing and/or initialing it. All changes to this Agreement should be initialed and dated.
60     (C) The settlement date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.
61     (D) Certain time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed time periods are negotiable
62       and may be changed by striking out the pre-printed text and inserting a different time period acceptable to all parties.
63  **6. MORTGAGE CONTINGENCY (9-05)**
64     ☒ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may still obtain mortgage financing.
65     ☐ ELECTED.
66     (A) This sale is contingent upon Buyer obtaining mortgage financing as follows:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $_____ | Loan Amount $_____ |
| Minimum Term _____ years | Minimum Term _____ years |
| Type of mortgage _____ | Type of mortgage _____ |
| Mortgage lender _____ | Mortgage lender _____ |

74  Interest rate _____%; however, Buyer agrees to accept the    Interest rate _____%; however, Buyer agrees to accept the
75  **interest rate as may be committed by the mortgage lender, not to**    **interest rate as may be committed by the mortgage lender, not to**
76  **exceed a maximum interest rate of _____%.**    **exceed a maximum interest rate of _____%.**
77  Discount points, loan origination, loan placement and other fees charged    Discount points, loan origination, loan placement and other fees charged
78  by the lender as a percentage of the mortgage loan (excluding any mort-    by the lender as a percentage of the mortgage loan (excluding any mort-
79  gage insurance premiums or VA funding fee) not to exceed    gage insurance premiums or VA funding fee) not to exceed
80  _____% (0% if not specified) of the mortgage loan.    _____% (0% if not specified) of the mortgage loan.

81  The interest rate(s) and fee(s) provisions in paragraph 6 (A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s)
82  and fee(s) at or below the maximum levels stated. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage
83  lender(s), to contribute financially, without promise of reimbursement, to the Buyer and/or the mortgage lender(s) to make the above mortgage terms
84  available to Buyer.
85     (B) Within _____ days (10 if not specified) from the Execution Date of this Agreement, Buyer will make a completed, written mortgage appli-
86       cation for the mortgage terms stated above to the mortgage lender(s) identified in paragraph 6 (A), if any, otherwise to a responsible mortgage
87       lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage
88       lender(s) to assist in the mortgage loan process.
89     (C) Should Buyer furnish false or incomplete information to Seller, Broker(s), or the mortgage lender(s) concerning Buyer's legal or
90       financial status, or fail to cooperate in good faith in processing the mortgage loan application, which results in the mortgage lender(s)
91       refusing to approve a mortgage loan commitment, Buyer will be in default of this Agreement.
92     (D) 1.  Mortgage commitment date: _____. If Seller does not receive a copy of Buyer's mortgage commitment(s) by this
93          date, Buyer and Seller agree to extend the mortgage commitment date until Seller terminates this Agreement in writing to Buyer.
94        2. Upon receiving a mortgage commitment, Buyer will promptly deliver a copy of the commitment to Seller.
95        3. Seller may terminate this Agreement in writing after the mortgage commitment date, if the mortgage commitment(s):
96          a.  Is not valid until the date of settlement, OR
97          b.  Is conditioned upon the sale and settlement of any other property, OR
98          c.  Does not satisfy all the mortgage terms as stated in paragraph 6 (A), OR
99          d.  Contains any other condition not specified in this Agreement that is not satisfied and/or removed in writing by the mortgage lender(s)
100          within __7__ DAYS after the mortgage commitment date in paragraph 6 (D) (1), other than those conditions that are customari-
101          ly satisfied at or near settlement, such as obtaining insurance and confirming employment status.
102       4. If this Agreement is terminated pursuant to paragraphs 6 (D) (1) or (3), or the mortgage loan(s) is not obtained for settlement, all deposit monies
103         will be returned to Buyer according to the terms of paragraph 30 and this Agreement will be VOID. Buyer will be responsible for any costs incurred
104         by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title
105         search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance and/or fire insurance with extended cov-
106         erage, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

107      RG/JY

(2) If the mortgage lender(s), or an insurer providing property and casualty insurance as required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ____5____ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.

    1.   If Seller makes the required repairs to the satisfaction of the mortgage lender(s) or insurer, Buyer accepts the Property and agrees to the RELEASE in paragraph 27 of this Agreement.

    2.   If Seller will not make the required repairs, or if Seller fails to respond within the time given, Buyer will, within ____5____ DAYS, notify Seller of Buyer's choice to:

        a.   Make the required repairs, at Buyer's expense, with permission and access to the Property given by Seller; permission and access may not be unreasonably withheld by Seller, OR

        b.   Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.

(F)  **Seller Assist**

    ☒  NOT APPLICABLE

    ☐  APPLICABLE. Seller will pay:

       ☐  $_____ , or

       ☐  _____ % of Purchase Price, maximum, toward Buyer's costs as acceptable to the mortgage lender(s).

---

**FHA/VA, IF APPLICABLE**

(G)  It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ (the dollar amount to be inserted is the sales price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false . . . shall be fined under this title or imprisoned not more than two years, or both."

(H)  U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement

    ☐  Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.

(I)  Certification   We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

**7.**  **WAIVER OF CONTINGENCIES (9-05)**

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in paragraph 27 of this Agreement.

**8.**  **PROPERTY INSURANCE AVAILABILITY (9-05)**

    ☒  WAIVED. This Agreement is NOT contingent upon Buyer obtaining property and casualty insurance for the Property, although Buyer may still obtain property and casualty insurance.

    ☐  ELECTED. Contingency Period: ____ DAYS (15 if not specified) from the Execution Date of this Agreement. Within the Contingency Period, Buyer will make application for property and casualty insurance for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the insurer to assist in the insurance process. If Buyer cannot obtain property and casualty insurance for the Property on terms and conditions reasonably acceptable to Buyer, Buyer will, within the Contingency Period:

(A)  Accept the Property and agree to the RELEASE in paragraph 27 of this Agreement, OR

(B)  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement, OR

(C)  Enter into a mutually acceptable written agreement with Seller.

If Buyer and Seller do not reach a written agreement during the Contingency Period, and Buyer does not terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in paragraph 27 of this Agreement.

**9.**  **INSPECTIONS (9-05)**

(A)  Seller will provide access to insurers' representatives and, as may be required by this Agreement, to surveyors, municipal officials, and inspectors. If Buyer is obtaining mortgage financing, Seller will provide access to the Property to appraisers and others reasonably required by mortgage lender(s). Buyer may attend any inspections.

(B)  Buyer may make a pre-settlement walk-through inspection of the Property. Buyer's right to this inspection is not waived by any other provision of this Agreement.

(C)  Seller will have heating and all utilities (including fuel(s)) on for all inspections.

(D)  All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection report to Broker for Buyer.

(E)  Seller has the right, upon request, to receive without charge a copy of any inspection report from the party for whom it was prepared.

Seller Initials: _____

01/10/2008 12:49 FAX 6143623718          CBBK  CNL                                    ☑010

**10.  INSPECTION CONTINGENCY OPTIONS (9-05)**

The inspection contingencies elected by Buyer in paragraphs 11-15 are controlled by the Options set forth below. The time periods stated in these Options will apply to all inspection contingencies in paragraphs 11-15 unless otherwise stated in this Agreement.

**Option 1. Within the Contingency Period, as stated in paragraphs 11-15, Buyer will:**

    1.  Accept the Property with the information stated in the report(s) and agree to the RELEASE in paragraph 27 of this Agreement, OR

    2.  If Buyer is not satisfied with the information stated in the report(s), terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement, OR

    3.  Enter into a mutually acceptable written agreement with Seller providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender(s), if any.

        If Buyer and Seller do not reach a written agreement during the specified Contingency Period, and Buyer does not terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in paragraph 27 of this Agreement.

**Option 2. Within the Contingency Period, as stated in paragraphs 11-15, Buyer will:**

    1.  Accept the Property with the information stated in the report(s) and agree to the RELEASE in paragraph 27 of this Agreement, OR

    2.  If Buyer is not satisfied with the information stated in the report(s), present the report(s) to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer. The Proposal may, but is not required to, include the name of a properly licensed or qualified professional to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal, or by a contractor selected by Buyer.

      a.  Within _____ days (7 if not specified) of receiving Buyer's Proposal, Seller will inform Buyer in writing of Seller's choice to:

        (1)  Satisfy the terms of Buyer's Proposal, OR

        (2)  Credit Buyer at settlement for the costs to satisfy the terms of Buyer's Proposal, as acceptable to the mortgage lender(s), if any, OR

        (3)  Not satisfy the terms of Buyer's Proposal and not credit Buyer at settlement for the costs to satisfy the terms of Buyer's Proposal.

      b.  If Seller agrees to satisfy the terms of Buyer's Proposal or to credit Buyer at settlement as specified above, Buyer accepts the Property and agrees to the RELEASE in paragraph 27 of this Agreement.

      c.  If Seller chooses not to satisfy the terms of Buyer's Proposal and not to credit Buyer at settlement as specified above, or if Seller fails to choose any option within the time given, Buyer will, within _____ days (5 if not specified):

        (1)  Accept the Property with the information stated in the report(s) and agree to the RELEASE in paragraph 27 of this Agreement, OR

        (2)  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement, OR

        (3)  Enter into a mutually acceptable written agreement with Seller providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender(s), if any.

        If Buyer and Seller do not reach a written agreement during the time specified in Option 2, 2. c., and Buyer does not terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in paragraph 27 of this Agreement.

**11.  PROPERTY INSPECTION CONTINGENCY (9-05) (See Property and Environmental Inspection Notices)**

Buyer understands that property inspections, certifications and/or investigations can be performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals, and may include, but are not limited to: structural components; roof; exterior windows and exterior doors; exterior siding, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical, plumbing, heating and cooling systems; water penetration; environmental hazards (e.g., mold, fungi, indoor air quality, asbestos, underground storage tanks, etc.); electromagnetic fields; wetlands inspection; flood plain verification; property boundary/square footage verification; and any other items Buyer may select. Buyer is advised to investigate easements, deed and use restrictions (including any historic preservation restrictions or ordinances) that apply to the Property and to review local zoning ordinances. Other provisions of this Agreement may provide for inspections, certifications and/or investigations that are not waived or altered by Buyer's election here.

    ☒  WAIVED. Buyer has the option to conduct property inspections, certifications and/or investigations. Buyer WAIVES THIS OPTION and agrees to the RELEASE in paragraph 27 of this Agreement.

    ☐  ELECTED. Contingency Period: _____ days (15 if not specified) from the Execution Date of this Agreement.

    (A)  Within the Contingency Period, Buyer, at Buyer's expense, may have inspections, certifications and/or investigations completed by properly licensed or otherwise qualified professionals. If Buyer elects to have a home inspection of the Property, as defined in the Pennsylvania Home Inspection Law (see Information Regarding the Home Inspection Law), the home inspection must be performed by a full member of a national home inspection association or a person supervised by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered professional engineer, or a properly licensed or registered architect. This contingency does not apply to the following existing conditions and/or items:

    _____

    _____

    (B)  If Buyer is not satisfied with the condition of the Property as stated in the written inspection report(s), Buyer will proceed under one of the following Options as listed in paragraph 10 within the Contingency Period:

      ☐  Option 1

      ☐  Option 2  For the purposes of Paragraph 11 only, Buyer agrees to accept the Property with the results of any report(s) and agrees to the RELEASE in paragraph 27 of this Agreement if the total cost to correct the conditions stated in the report(s) is less than $_____ ($0 if not specified) (the "Deductible Amount"). Otherwise, all provisions of paragraph 10, Option 2, shall apply, except that Seller will be deemed to have satisfied the terms of Buyer's Proposal if Seller agrees to perform corrections or offer credits such that the cumulative cost of any uncorrected or uncredited condition(s) is equal to the Deductible Amount.

PAGE  11/17                    US MARSHALS                    4126446432          00:30  15:00  8002/54/10

01/10/2008 12:50 FAX 8148523718          CBBA  UNL                                      Ø011

**12. WOOD INFESTATION INSPECTION CONTINGENCY (9-05)**

   ☒ WAIVED. Buyer has the option to have the Property inspected for wood infestation by an inspector certified as a wood-destroying pests pesticide applicator. BUYER WAIVES THIS OPTION and agrees to the RELEASE in paragraph 27 of this Agreement.

   ☐ ELECTED. Contingency Period: _____ days (15 if not specified) from the Execution Date of this Agreement.

   (A) Within the Contingency Period, Buyer, at Buyer's expense, may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The report is to be made satisfactory to and in compliance with applicable laws, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements, if any. The inspection is to be limited to all readily visible and accessible areas of all structures on the Property except fences and the following structures, which will not be inspected: _____

      _____

   (B) If the inspection reveals active infestation(s), Buyer, at Buyer's expense, may within the Contingency Period, obtain a Proposal from a wood-destroying pests pesticide applicator to treat the Property.

   (C) If the inspection reveals damage from active or previous infestation(s), Buyer, at Buyer's expense, may within the Contingency Period, obtain a written report from a professional contractor, home inspector or structural engineer that is limited to structural damage to the Property caused by wood-destroying organisms and a Proposal to repair and/or treat the Property.

   (D) If Buyer is not satisfied with the condition of the Property as stated in the written inspection report(s), Buyer will proceed under one of the following Options as listed in paragraph 10 within the Contingency Period:

     ☐ Option 1

     ☐ Option 2

**13. STATUS OF RADON (9-05) (see Information Regarding Radon)**

   (A) Seller has no knowledge concerning the presence or absence of radon unless checked below:

     ☐ 1. Seller has knowledge that the Property was tested on the dates, by the methods (e.g., charcoal canister, alpha track, etc.), and with the results of all tests indicated below:

       DATE    TYPE OF TEST    RESULTS (picoCuries/liter or working levels)

       _____

       _____

     ☐ 2. Seller has knowledge that the Property underwent radon reduction measures on the date(s) and by the method(s) indicated below:

       DATE    RADON REDUCTION METHOD

       _____

       _____

       COPIES OF ALL AVAILABLE TEST REPORTS will be delivered to Buyer with this Agreement. SELLER DOES NOT WARRANT EITHER THE METHODS OR RESULTS OF THE TESTS.

   (B) **RADON INSPECTION CONTINGENCY**

     ☒ WAIVED. Buyer has the option to have the Property inspected for radon by a certified inspector. BUYER WAIVES THIS OPTION and agrees to the RELEASE in paragraph 27 of this Agreement.

     ☐ ELECTED. Contingency Period: _____ days (15 if not specified) from the Execution Date of this Agreement.

     Within the Contingency Period, Buyer, at Buyer's expense, may obtain a radon test of the Property from a certified inspector. If Seller performs any radon remediation, Seller will provide Buyer a certification that the remediation was performed by a properly licensed and certified radon mitigation company.

     1. If the written test report reveals the presence of radon below 0.02 working levels or 4 picoCuries/liter (4 pCi/L), Buyer accepts the Property and agrees to the RELEASE in paragraph 27 of this Agreement.

     2. If the written test report reveals the presence of radon at or exceeding 0.02 working levels or 4 picoCuries/liter (4 pCi/L), Buyer will proceed under one of the following Options as listed in paragraph 10 within the Contingency Period:

       ☐ Option 1

       ☐ Option 2

**14. STATUS OF WATER (9-05)**

   (A) Seller represents that the Property is served by:

     ☐ Public Water

     ☒ On-site Water

     ☐ Community Water

     ☐ None

     ☐ _____

   (B) **WATER SERVICE INSPECTION CONTINGENCY**

     ☒ WAIVED. Buyer has the option to have an inspection of the quality and or quantity of the water system for the Property. BUYER WAIVES THIS OPTION and agrees to the RELEASE in paragraph 27 of this Agreement.

     ☐ ELECTED. Contingency Period: _____ days (15 if not specified) from the Execution Date of this Agreement.

     1. Within the Contingency Period, Buyer, at Buyer's expense, may obtain an inspection of the quality and/or quantity of the water system from a properly licensed or otherwise qualified water/well testing company.

     2. If required by the inspection company, Seller, at Seller's expense, will locate and provide access to the on-site (or individual) water system. Seller also agrees to restore the Property, at Seller's expense, prior to settlement.

     3. If Buyer is not satisfied with the condition of the water system as stated in the written inspection report(s), Buyer will proceed under one of the following Options as listed in paragraph 10 within the Contingency Period:

       ☐ Option 1

       ☐ Option 2

_RW/DW_ (initials)

Seller Initials: _____ ____ ____

01/18/2008 12:31 FAX 8143823718                CBBK CNI.                                    ☑012

**15. STATUS OF SEWER (9-05)**

(A) Seller represents that the Property is served by:

- ☒ Public Sewer
- ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)
- ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
- ☐ Community Sewage Disposal System
- ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
- ☐ Holding Tank (see Sewage Notice 3)
- ☐ None (see Sewage Notice 1)
- ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
- ☐

(B) **INDIVIDUAL ON-LOT SEWAGE DISPOSAL INSPECTION CONTINGENCY**

- ☐ WAIVED. Buyer has the option to have an inspection of the individual on-lot sewage disposal system for the Property. BUYER WAIVES THIS OPTION and agrees to the RELEASE in paragraph 27 of this Agreement.
- ☐ ELECTED. Contingency Period: _____ days (15 if not specified) from the Execution Date of this Agreement.
    1. Within the Contingency Period, Buyer, at Buyer's expense, may obtain an inspection of the individual on-lot sewage disposal system from a qualified, professional inspector.
    2. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to and empty the individual on-lot sewage disposal system. Seller will also restore the Property, at Seller's expense, prior to settlement.
    3. If the inspection report reveals defects that do not require expansion or replacement of the existing individual on-lot sewage disposal system, Buyer will proceed under one of the following Options as listed in paragraph 10 within the Contingency Period:
        - ☐ Option 1
        - ☐ Option 2
    4. If the inspection report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within ___25__ DAYS of receiving the inspection report, submit a Written Corrective Proposal ("Proposal") to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within ___5__ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the time given, Buyer will notify Seller in writing of Buyer's choice to:
        a. Agree to the terms of the Proposal, if any, whereupon Buyer accepts the Property and agrees to the RELEASE in paragraph 27 of this Agreement, OR
        b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.
        c. Accept the Property and the existing system and agree to the RELEASE in paragraph 27 of this Agreement, and, if required by any mortgage lender and/or any governmental authority, correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, and with permission and access to the Property given by Seller. Permission and access may not be unreasonably withheld by Seller. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within ___5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.

**16. HOME WARRANTIES (9-05)**

At or before settlement, either party may have the opportunity to purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that the licensee, broker or mortgage lender who orders the home warranty may possibly receive a fee paid by the home warranty company.

**17. ZONING CLASSIFICATION & VERIFICATION OF USE CONTINGENCY (9-05)**

(A) Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdividable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
   Zoning Classification:_____ R

(B) Contingency Period: _____ days (7 if not specified) from the Execution Date of this Agreement.
   Within the Contingency Period, Buyer, at Buyer's expense, may verify that the present use (_____) of the Property is permitted. In the event the present use is not permitted, Buyer will, within the Contingency Period, give Seller written notice that the present use of the Property is not permitted and that Buyer will:
    1. Accept the Property and agree to the RELEASE in paragraph 27 of this Agreement, OR
    2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.
   If Buyer fails to respond within the Contingency Period or does not terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in paragraph 27 of this Agreement.

**18. NOTICES, ASSESSMENTS & CERTIFICATES OF OCCUPANCY (9-05)**

(A) Seller represents, as of the date Seller signed this Agreement, that no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here:_____

(B) Seller knows of no other potential notices (including violations) and/or assessments except as follows:_____
   _____

A/S-R Page 6 of 10
Revised 9/05

✓ Seller Initials: _____

(C) In the event any notices (including violations) and/or assessments are received after Seller has signed this Agreement and before settlement, Seller will provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing within __5__ DAYS of receiving the notices and/or assessments that Seller will:

1. Fully comply with the notices and/or assessments at Seller's expense before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in paragraph 27 of this Agreement, OR

2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails within the time given to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within __5__ DAYS that Buyer will:

   a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in paragraph 27 of this Agreement, OR

   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.

If Buyer fails to respond within the time stated in paragraph 18 (C) (2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in paragraph 27 of this Agreement.

(D) If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than 15 days prior to settlement, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.

1. Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will notify Buyer in writing that Seller will:

   a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in paragraph 27 of this Agreement, OR

   b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will notify Seller in writing within __5__ DAYS that Buyer will:

      (1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld, OR

      (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.

If Buyer fails to respond within the time stated in paragraph 18 (D) (1) (b) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in paragraph 27 of this Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the notice provided by the municipality.

2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before settlement to make the required repairs/improvements, Buyer may, within __5__ DAYS, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.

3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in paragraph 18 (D), Seller will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 18 (D) (3) will survive settlement.

(E) Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

**19. TITLE, SURVEYS & COSTS (9-05)**

(A) The Property will be conveyed with good and marketable title as is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(B) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance with extended coverage, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s); (4) Buyer's customary settlement costs and accruals.

(C) Any survey or surveys required by the title insurance company or the abstracting attorney for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(D) If Seller is unable to give a good and marketable title and such as is insurable by a reputable title insurance company at the regular rates, as specified in paragraph 19 (A), Buyer will:

1. Accept the Property with such title as Seller can give, with no change to the purchase price, and agree to the RELEASE in paragraph 27 of this Agreement, OR

2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in paragraph 19 (B) items (1), (2), (3) and in paragraph 19 (C).

(E) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here (see Information Regarding Recreational Cabins):

**20. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATION) RESALE NOTICE (9-05)**

☒ NOT APPLICABLE

☐ APPLICABLE: CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. §3407 of the Uniform Condominium Act of Pennsylvania (see Information Regarding Condominiums and Planned Communities) requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

☐ APPLICABLE: PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act (see Information Regarding Condominiums and Planned Communities). §5407(a) of the Act requires Seller to furnish Buyer with a copy of the Declaration (other than plats and plans), the bylaws the rules and regulations of the association, and a Certificate containing the provisions set forth in §5407(a) of the Act.

Buyer Initials: RE /PL          A/S-R Page 7 of 10          Seller Initials: _____

01/18/2008 12:32 FAX 8143823718          CBBK CNL                                    Ø014

THE FOLLOWING APPLIES TO PROPERTIES THAT ARE NOT PART OF A CONDOMINIUM OR A PLANNED COMMUNITY.

    (A) Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.

    (B) Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner, nor is Seller liable to Buyer for any incorrect information provided by the association in the Certificate.

    (C) The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of paragraph 30 of this Agreement.

    (D) If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance and/or fire insurance with extended coverage, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

**21. MAINTENANCE & RISK OF LOSS (9-05)**

    (A) Seller will maintain the Property, grounds, fixtures and personal property specifically listed in this Agreement in its present condition, normal wear and tear excepted.

    (B) If any system or appliance included in the sale of the Property fails before settlement, Seller will:
        1. Repair or replace the failed system or appliance before settlement, OR
        2. Provide prompt written notice to Buyer of Seller's decision to:
            a. Credit Buyer at settlement for the fair market value of the failed system or appliance, as acceptable to the mortgage lender(s), if any, OR
            b. Not repair or replace the failed system or appliance, and not credit Buyer at settlement for the fair market value of the failed system or appliance.
        3. If Seller does not repair or replace the failed system or appliance or agree to credit Buyer for its fair market value, or if Seller fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within ___5___ DAYS or before settlement, whichever is earlier, that Buyer will:
            a. Accept the Property and agree to the RELEASE in paragraph 27 of this Agreement, OR
            b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.

    (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced, Buyer will:
        1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
        2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of paragraph 30 of this Agreement.

**22. COAL NOTICE (Where Applicable)**

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

**23. POSSESSION (9-05)**

    (A) Possession is to be delivered by deed, keys and:
        1. Physical possession to vacant Property free of debris, with all structures broom-clean, at day and time of settlement, AND/OR
        2. Assignment of any existing lease(s), together with any security deposits and interest, at day and time of settlement, if Property is leased at the execution of this Agreement, unless otherwise stated in this Agreement.
    (B) Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise specified herein.
    (C) Seller will not enter into any new leases, extensions of existing leases or additional leases for the Property without the written consent of Buyer.

**24. RECORDING (9-05)** This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement.

**25. ASSIGNMENT (9-05)** This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement.

**26. GOVERNING LAW, VENUE & PERSONAL JURISDICTION (9-05)**

    (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

    (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party shall be decided exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

**27. RELEASE (9-05)**

Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement, or in violation of any seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

A/S-R Page 8 of 10
Revised 9/05

Seller Initials: _____

CBBK CNL

**28. REPRESENTATIONS (9-05)**

(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their license-ees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent exam-ination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses or of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Any repairs required by this Agreement will be completed in a workmanlike manner.

(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

**29. DEFAULT (9-05)**

(A) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:

    1. Fail to make any additional payments as specified in paragraph 3, OR

    2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR

    3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(B) Unless otherwise checked in paragraph 29 (C), Seller may elect to retain those sums paid by Buyer, including deposit monies:

    1. On account of purchase price, OR

    2. As monies to be applied to Seller's damages, OR

    3. As liquidated damages for such breach.

(C) ☒ SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.

(D) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to paragraph 29 (B) or (C), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

**30. TERMINATION & RETURN OF DEPOSITS (9-05)**

(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, all deposit monies paid on account of purchase price will be returned to Buyer and this Agreement will be VOID. The broker holding the deposit monies may only release the deposit monies accord-ing to the terms of a fully executed written agreement between Buyer and Seller and as permitted by the Rules and Regulations of the State Real Estate Commission.

(B) If there is a dispute over entitlement to deposit monies, a broker is not legally permitted to determine if a breach occurred or which party is enti-tled to deposit monies. A broker holding the deposit monies is required by the Rules and Regulations of the State Real Estate Commission to retain the monies in escrow until the dispute is resolved. In the event of litigation over deposit monies, a broker will distribute the monies accord-ing to the terms of a final order of court or a written agreement of the parties. Buyer and Seller agree that, if any broker or affiliated licensee is joined in litigation regarding deposit monies, the attorneys' fees and costs of the broker(s) and licensee(s) will be paid by the party joining them.

**31. REAL ESTATE RECOVERY FUND (9-05)**

A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (out-side Pennsylvania).

**32. MEDIATION (9-05)**

(A) Unless otherwise checked in paragraph 32 (D), Buyer and Seller will submit all disputes or claims that arise from this Agreement to mediation in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System. Any agreement reached through mediation and signed by the parties will be binding (see Information Regarding Mediation).

(B) Buyer and Seller have received, read, and understand the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System.

(C) Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

(D) ☐ MEDIATION IS WAIVED. Buyer and Seller understand that they may choose to mediate at a later date should a dispute or claim arise, but that there will be no obligation for any party to do so.

**33. RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT NOTICE (Required for properties built before 1978) (9-05)**

**Lead-Based Paint Hazards Disclosure Requirements:** The Residential Lead-Based Paint Hazard Reduction Act requires any seller of prop-erty built before 1978 to provide the buyer with an EPA-approved lead hazards information pamphlet titled *Protect Your Family from Lead in Your Home* and to disclose to the buyer and the broker(s) the known presence of lead-based paint and/or lead-based paint hazards in or on the proper-ty being sold, along with the basis used for determining that the hazards exist, the location of the hazards, and the condition of painted surfaces. Any seller of a pre-1978 structure must also provide the buyer with any records or reports available to the seller regarding lead-based paint and/or lead-based paint hazards in or about the property being sold, the common areas, or other residential dwellings in multi-family housing. Before a buyer is obligated to purchase any housing constructed prior to 1978, the Act requires the seller to give the buyer 10 days (unless buyer and sell-er agree in writing to another time period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards. The opportunity to conduct a risk assessment or inspection may be waived by the buyer, in writing. Neither testing nor abatement is required of the seller. Housing built in 1978 or later is not subject to the Act.

☐ NOT APPLICABLE. Property was built in 1978 or later.

☒ APPLICABLE. Property was built before 1978. Broker must attach the Lead-Based Paint Hazards Disclosure and Inspection Contingency Addendum (PAR Form LPA) or another acceptable form with the information required by the Act, and provide Buyer the pamphlet *Protect Your Family from Lead in Your Home*. Buyer(s) must initial below that they have received both documents:

➤ _____ Lead-Based Paint Hazards Disclosure and Inspection Contingency Addendum (attached as part of this Agreement).

➤ _____ *Protect Your Family from Lead in Your Home*

A/S-R Page 9 of 10
Revised 9/05

Seller Initials: _____

01/18/2008 12:34 FAX 8143823718          CBBK CNL                                    ☑018

**34.  SPECIAL CLAUSES (1-02)**

(A)  The following are part of this Agreement if checked:
☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum(PAR Form SSP-CM)
☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
☐ Tenant-Occupied Property Addendum (PAR Form TOP)
☐ _____
☐ _____
☐ _____
☐ _____

(B)

*All Utilities to Be turned on AND Mechanicals to Be working statisfactorily prior to Closing.*

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Parties to this transaction are advised to consult an attorney before signing if they desire legal advice.

Return by facsimile transmission (FAX) of this Agreement, and any addenda and amendments, bearing the signatures of all parties, constitutes acceptance by the parties.

☑ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
☑ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.
☑ Buyer has read and understands the notices and explanatory information in this Agreement.
☐ Buyer has received a Seller's Property Disclosure Statement before signing this Agreement, if required by law (see Information Regarding the Real Estate Seller Disclosure Law).
☐ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

BUYER ███████  14 Bentry Ct.
          Waldorf Md. 20602

WITNESS_____  BUYER _Raymond Welsh_ ████ 12/26/07
WITNESS_____  BUYER _____ E Edy_ ████ 12/26/07
WITNESS_____  BUYER _____  DATE _____

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
Seller has received a statement of Seller's estimated closing costs before signing this Agreement.
Seller has read and understands the notices and explanatory information in this Agreement.

SELLER'S MAILING ADDRESS: _____
_____

WITNESS_____  SELLER _____  DATE _____
WITNESS_____  SELLER _____  DATE _____
WITNESS_____  SELLER _____  DATE _____

A/S-R Page 10 of 10
Revised 9/05

SELLER'S COPY